Filed For Record
Drew County, AR
Beverly Burns, Circuit Clerk
By_____

JUL 19 2021

AM1/2/3/4/5/6/7/8/9/10/11/12PM

IN THE CIRCUIT COURT OF DREW COUNTY, ARKANSAS
CIVIL DIVISION

EARLINE WELLS                                    PLAINTIFF

VS.                    No. 22CV-21-97

REVERSE MORTGAGE FUNDING, LLC and
THE SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOUSING & URBAN
DEVELOPMENT                                      DEFENDANT

## COMPLAINT

COMES NOW the Plaintiff, Earline Wells, by and through her attorneys,

Gibson & Keith, PLLC, and, for her Complaint against Defendants, Reverse

Mortgage Funding, LLC and The Secretary of the United States Department of

Housing and Urban Development, states as follows:

## JURISDICTION & VENUE

1.     At all relevant times, Plaintiff has resided in Drew County, Arkansas.

2.     Defendant Reverse Mortgage Funding, LLC is a Delaware corporation

doing business in the State of Arkansas.  Defendant's registered agent for service

1

of process in Arkansas is the Corporate Creations Network, Inc. at 609 SW 8th Street #600 in Bentonville, AR 72712.

3.      Defendant Secretary of the United States Department of Housing & Urban Development is an officer of a United States agency with an address for service of process at 451 Seventh Street, S. W. in Washington, D. C. 20410.

4.      This Court has jurisdiction over the parties and subject matter hereof, and venue is proper in this Court.

## COUNT I – FOR REFORMATION AND ATTORNY FEES

5.      In late 2016 Plaintiff Earline Wells and her late husband, Bobby Wells, were offered a reverse mortgage deal by Defendant under which Plaintiff and her husband would mortgage their residence and 1 acre of land (and an easement thereto) in exchange for their receipt of funds from Defendant.

6.      At the time, Plaintiff and her husband were life-time beneficiaries of the Big Piney Trust which was holding title to the approximately 71 acres of land in Section 3, Township 12 South, Range 7 West, Drew County, Arkansas, upon which the residence of Plaintiff and her husband was situated, and on which Plaintiff and her husband had lived on for decades.  Attached as Exhibit "A" hereto is a copy of the deed by which the subject 71 acres were vested in the Trustee of the Big Piney

2

Trust in November of 1998. Attached as Exhibit "B" hereto is a copy of the instrument dated November 6, 1998, which created the Big Piney Trust. Thereafter, the trustee of the Big Piney Trust conveyed small parcels taken out of the subject 71 acres from 1999 through 2017, including deeds appearing in the Drew County land records as follows: Book 447, at page 299; Instrument No. 72160; Instrument No. 93673; Instrument No. 93674; Instrument No. 93961; and Instrument No. 93963.

7.     As part of the subject reverse mortgage transaction, Plaintiff and her husband Bobby Wells had their residence and the 1 acre upon which that residence is situated, as well as an easement to same from U.S. Highway No. 425, surveyed by Mr. Josh Martin, Registered Land Surveyor, on September 18, 2016, a copy of which survey is attached hereto as Exhibit "C".

8.     As a further part of the subject reverse mortgage transaction, Plaintiff and her husband Bobby Wells obtained a deed from the trustee of the Big Piney Trust conveying to them fee simple ownership in the 1 acre part of the 71 acres held by Big Piney Trust upon which their residence dwelling is situated, together with an easement from U.S. Highway 425 to same across said 71 acre tract, which deed was filed on May 9, 2017, and is recorded in the Drew County land records as Instrument No. 92695, a copy of which deed is attached hereto as Exhibit "D".

9.     As a further part of the subject reverse mortgage transaction, Defendant

3

Reverse Mortgage Funding, LLC, had said 1 acre parcel with Plaintiff and her husband's residence situated thereon appraised by Glenn H. Morgan, Jr. of Monticello, Arkansas, a copy of the pertinent portion of which appraisal is attached hereto as Exhibit "E".

10.    As a further part of the subject reverse mortgage transaction, Plaintiff and her husband, Bobby Wells, signed a mortgage (titled Deed of Trust) to MERS as a nominee of the lender, Defendant Reverse Mortgage Funding, LLC, intending to pledge the 1 acre on which their residence is situated, and an easement to same from U.S. Highway No. 425.  However, unbeknown to Plaintiff and her husband and, based on information and belief, unbeknown to Defendant Reverse Mortgage Funding, LLC, this mortgage covered the entire 71 acre tract held by the Big Piney Trust (less a couple of minor parcels that are not relevant to this matter) instead of the 1 acre on which the residence of Plaintiff and her husband was situated, together with the access easement to same.  A copy of the face page of this mortgage, together with the land description pages thereof, is attached hereto as Exhibit "F".

11.    As a further part of the subject reverse mortgage transaction, Plaintiff and her husband Bobby Wells signed a second mortgage (titled Second Deed of Trust) to the Senior Official With Responsibility For Single Family Mortgage Insurance Programs in the Department of Housing and Urban Development Field

4

Office With Jurisdiction Over the Property Described therein, with the beneficiary of this mortgage being The Secretary of Housing and Urban Development, intending to pledge the 1 acre on which their residence is situated, and an easement to same from U.S. Highway No. 425. However, unbeknown to Plaintiff and her husband and, based on information and belief, unbeknown to Defendant Secretary of Housing and Urban Development, this second mortgage covered the entire 71 acre tract held by the Big Piney Trust (less a couple of minor parcels that are not relevant to this matter) instead of the 1 acre on which the residence of Plaintiff and her husband were situated, together with the access easement to same. A copy of the face page of this second mortgage, together with the land description pages thereof, is attached hereto as Exhibit "G".

12.     Plaintiff's husband Bobby Wells died on September 20, 2020.

13.     Thereafter, Plaintiff discovered that the above-cited mortgages given in the subject reverse mortgage transaction covered lands well beyond the 1 acre upon which her long-time residence is situated, and which are owned by the Big Piney Trust (and its grantees on various small parcels) and which are not owned by her.

14.     Plaintiff engaged the undersigned legal counsel to assist her in straightening out the incorrect description on the above-described mortgages to Defendants Reverse Mortgage Funding, LLC, and the Secretary of Housing and

5

Urban Development.

15.    Rather that sue Defendants Reverse Mortgage Funding, LLC and the Secretary of Housing and Urban Development for reformation of the above-described mortgages to only cover Plaintiff's 1 acre and home, Plaintiff's counsel wrote Defendant Reverse Mortgage Funding, LLC seeking to correct the mis-description of the property without the time, trouble, and expense of a lawsuit. Attached as Exhibit "H" hereto is a copy of the January 13, 2021, letter sent in this regard to Defendant Reverse Mortgage Funding, LLC.

16.    On February 3, 2021, Plaintiff's counsel received a letter response from Defendant Reverse Mortgage Funding, LLC which admits the error in description set forth in the above-described mortgages, and informed that "their title resolution team is reviewing the lien with the intent to remove any and all acres from the lien that the lien was not intended to cover."    Attached as Exhibit "I" hereto is a copy of this letter.

17.    Since said letter from Defendant Reverse Mortgage Funding, LLC, neither Plaintiff nor her undersigned legal counsel have heard anything further from Defendant Reverse Mortgage Funding, LLC, and that is true despite multiple fruitless attempts of Plaintiff's counsel to make contact with Defendant Reverse Mortgage Funding, LLC.    Basically, Defendant Reverse Mortgage Funding, LLC

6

has intentionally ignored attempts to communicate with it, leaving Plaintiff and neighboring property owners in a precarious position relative to the title to their properties, and necessitating the filing of this suit.

18. Based on mutual mistake of fact by both the mortgagor and the mortgagees on the above-described mortgages, said mortgages should be reformed to describe and encumber only the 1 acre with Plaintiff's residence situated thereon, together with the access easement to the highway as described by the survey done by Josh Martin, Registered Land Surveyor, that is attached hereto as Exhibit "C".

19. Further, since the Defendant Reverse Mortgage Funding, Inc., has failed to cooperate in correcting the error in description on the above-described mortgages, thereby necessitating the drafting and filing of this lawsuit, and since this involves a matter of contract, Plaintiff should be awarded her attorney fees pursuant to Ark. Code Ann. 16-22-308 and other applicable law.

## COUNT II
## FOR ORDER DIRECTING PAYMENT OF INSURANCE PROCEEDS

20. Plaintiff has received a check her homeowner insurance company in the amount of $13,235.75 as payment for a claim resulting from storm damage to Plaintiff's home. Defendant Reverse Mortgage Funding, LLC, is also listed as a loss payee on Plaintiff's homeowner insurance. Plaintiff paid out of pocket to

7

repair the damage to the home, and through her counsel has requested Defendant Reverse Mortgage Funding, LLC to endorse the check (which includes Defendant's name as a payee on the check) or otherwise take such action as is necessary for Plaintiff to have the funds represented by the check from her insurance company, she having repaired the damage out of her own pocket.

21.     Plaintiff through her counsel's office has attempted to make phone contact with Defendant Reverse Mortgage Funding, LLC in an effort to resolve the matter of the insurance check.   Those efforts were met with a list of requirements that had to be met in order to get the funds represented by the insurance check to Plaintiff.   On follow-up calls to further discuss satisfaction of this Defendant's said requirements, personnel of Plaintiff's counsel's office were met with at least 2 mid-call hang-ups by said Defendant's personnel.   Since this looks just like the lack of cooperation in straightening out the mortgage description, Plaintiff seeks the aid of this Court to secure to her the funds represented by the insurance check. Specifically, Plaintiff asserts breach of contract against Defendant Reverse Mortgage Funding, LLC by its interference with Plaintiff's rights to the funds represented by the insurance check.

8

WHEREFORE, Plaintiff prays that this Court reform the mortgage between Plaintiff and Defendant such that the reformed mortgage covers only the 1 acre of real property and easement intended to be mortgaged, that this Court enter a declaratory order requiring that Defendant endorse the insurance check so that Plaintiff may receive the funds represented thereby, that Plaintiff recover her reasonable attorneys' fees and costs in bringing this action, and for any further relief to which Plaintiff may show herself entitled.

RESPECTFULLY SUBMITTED,
EARLINE WELLS, PLAINTIFF

BY: _____

Daniel H. Wigley  Ark. Bar No. 2020266
GIBSON & KEITH, PLLC
P.O. DRAWER 447
MONTICELLO, AR 71657
(870) 367-2438   (870) 367-8306 fax
dhw@gibsonandkeith.com

9

000269

462-
265

FILED FOR RECORD
DREW CO. ARK.
RAY DRAKE
CIRCUIT CLERK

NOV 10 1998

This Instrument Prepared By:
C. C. Gibson, III, Attorney
Monticello, Arkansas

AM
78,9 10 11 12 1 2 3 4 5 6

**W A R R A N T Y   D E E D**

KNOW ALL MEN BY THESE PRESENTS:

That we, Thomas C. Leggett and Nealie Leggett, his wife, for

and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00)

and other good and valuable consideration cash in hand paid by

Gerald Scott Wells, as Trustee of the Big Piney Trust, the receipt

and overall sufficiency of which consideration is hereby expressly

acknowledged, do hereby grant, bargain, sell and convey unto the

said Gerald Scott Wells, as Trustee, and unto his successors and

assigns forever, the following described real property situated in

the County of Drew, State of Arkansas, to-wit:

 A parcel of land 14.15 chains wide
(measured East and West) taken by parallel
lines off the entire West side of Lot No. 1 in
the Fractional NE¼ of Section 3, Township 12
South, Range 7 West, containing approximately
41 acres, more or less; and

 A parcel of land in Lot No. 2 in the
North Fractional Half of Section 3, Townsip 12
South, Range 7 West, bounded by a line
beginning at the Southeast corner of said Lot
2 and running thence North along the East
boundary thereof a distance of 900 feet to the
Northeast corner of the parcel of land
conveyed by deed recorded at page 278 of Book
157 of the Deed Records of Drew County,
Arkansas, for a POINT OF BEGINNING FOR THE
LAND HEREBY CONVEYED, thence from this
beginning point run North along the East
boundary of said Lot 2 a distance of 450 feet,
thence West parallel with the South boundary
of said Lot 2 a distance of 1045 feet to the
East boundary of the right-of-way of U.S.
Highway No. 425 (formerly known as Arkansas
State Highway No. 81), thence South along the
East boundary of said highway right-of-way a
distance of 450 feet to the Northwest corner
of the parcel of land conveyed by deed above-
mentioned, thence East along the North
boundary of said parcel of land conveyed by
deed above-mentioned a distance of 1045 feet
back to the point of beginning, containing 10
acres of land, more or less; and,

 Twenty acres of land taken in a strip of
uniform width off the entire South side of all
that part of Lot 2 in the North Fractional
Half of Section 3, Township 12 South, Range 7
West, lying East of the East boundary of the
right-of-way of U.S. Highway No 425 (formerly
known as Arkansas State Highway No. 81), as
same is now located.

TO HAVE AND TO HOLD the same unto the said Gerald Scott Wells,

as Trustee, and unto his successors and assigns forever, together

EXHIBIT

A

000270

Page Two - Leggett/Big Piney Trust Deed

with all tenements, hereditaments and appurtenances thereunto belonging.

And we, Thomas C. Leggett and Nealie Loggett, his wife, for said consideration, do hereby covenant with the said Gerald Scott Wells, as Trustee, and his successors and assigns, that we will forever warrant and defend the title to said real property against the lawful claims of all persons whomsoever.

And we, Thomas C. Leggett and Nealie Leggett, his wife, for said consideration, do hereby release and relinquish unto the said Gerald Scott Wells, as Trustee, and unto his successors and assigns, all our right and possibility of dower, curtesy, homestead and other statutory rights in and to said real property.

WITNESS our hands and seals on this _6th_ day of _November_, 1998.

_Thomas C. Leggett_ (SEAL)        _Nealie Leggett_ (SEAL)
Thomas C. Leggett                 Nealie Leggett

### ACKNOWLEDGMENT

STATE OF ARKANSAS )
                 )ss.
COUNTY OF D R E W )

BE IT REMEMBERED that on this _6th_ day of _November_, 1998, before me, the undersigned notary public, personally appeared THOMAS C. LEGGETT and NEALIE LEGGETT, his wife, known to me to be the persons whose names are subscribed to the within instrument and who acknowledged that they had executed the same for the consideration, uses and purposes therein mentioned and set forth.
IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires: _9-12-99_        _____
                                         Notary Public

I certify under penalty of false swearing
that at least the legally correct amount
of documentary stamps have been placed
on this instrument.

_Big Piney Trust Company_
Grantee or Grantee's Agent
_2544 Hwy 425 North_
Grantee's Address
_Montirello, AR 71655_

A true copy of the original as filed for record on the _10_ day of
_Nov_ 19 _98_ at _Phillip Kay Craig_  Clerk

*Original*

## BIG PINEY TRUST

We, Thomas C. Leggett and Nealie Leggett, his wife, Grantors of this Trust, hereby create the following trust on the day, month and year below written:

1.  **Trust Property.** We have caused or will cause the real property described on Exhibit A hereto to be conveyed and transferred to the Trustee. We reserve the right for ourselves, either of us, and other persons to increase the trust in the future.

2.  **Trustee.** The Trustee of this trust shall be Gerald Scott Wells. If this Trustee shall die or be unwilling or unable to so serve, then Bobby Shawn Wells shall be the Trustee of this trust. In the event neither of these Trustees is surviving and willing and able to serve, then Bobby Wells and Earline Wells, his wife, or the survivor of them, shall have the power to name a successor or alternative Trustee. And further, said Bobby Wells and Earline Wells, his wife, or the survivor of them, shall have the right and power, at their option or that of the survivor of them, to discharge, with or without cause, any Trustee and to name a substitute.

No Trustee shall be obligated to furnish a bond or to examine the accounts and actions of any previous Trustee, nor shall any Trustee be responsible in any way for any acts of omissions of any previous Trustee.

The Trustee shall have all the powers and authority set forth in Ark. Code Ann. § 28-69-304 applicable to the administration of

1



**EXHIBIT**

B

trusts; provided, however, that no real property may be sold without the written consent of Bobby Wells and Earline Wells, his wife, or the survivor of them.

The Trustee shall render at the request of Bobby Wells or Earline Wells, but no more often than annually, a statement showing in detail receipts, disbursements, and distributions of both principal and income.

3.  **Distribution During Trust.**  During the lives of Bobby Wells and Earline Wells, his wife, and that of the survivor of them, there may be paid or transferred to Bobby Wells and Earline Wells, his wife, or the survivor of them, or applied for their benefit or that of the survivor of them, such amounts out of the income and/or principal of the trust as the Trustee may, in his sole discretion, decide necessary and appropriate for the health, support and general welfare of them and that of the survivor of them. There is no requirement imposed on the Trustee to make any distribution to Bobby Wells or Earline Wells or for their benefit, and we direct the Trustee in determining amounts and frequencies of distribution to take into consideration any other property and income and sources of such which may be available to cover the expense of providing for the health, support and general welfare of Bobby Wells and Earline Wells, his wife, or the survivor of them. Further, Bobby Wells and Earline Wells, his wife, and the survivor of them, shall have the right to live on and have and enjoy exclusive occupancy of real property held in this trust.

4.  **Final Distribution.**  Upon the death of the survivor of

2

Bobby Wells and Earline Wells, his wife, all trust property shall be distributed to the children and other lineal descendants of Bobby Wells and Earline Wells, his wife, in equal shares, *per stirpes.*

5. <u>Amendment</u> <u>and</u> <u>Revocation</u>. This Trust may not be amended or revoked in any respect without the express written consent of Bobby Wells and Earline Wells, his wife, or the survivor of them.

6. <u>Spendthrift</u> <u>Clause</u>. To the extent permitted by law, no beneficiary of this trust shall have the power to dispose of or to charge by way of anticipation any interest given, and all sums payable to any beneficiary shall be free and clear of his or her debts, contracts, disposition, pledges and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof.

7. <u>Application</u> <u>of</u> <u>Trust</u> <u>Property</u>. No person dealing with the Trustee shall be obligated to see to the application of any money, or any other property paid or delivered to the Trustee, or to inquire into the Trustee's authority or power or into the expedience or propriety of any transaction consummated by the Trustee.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the __6__ day of __November__, 1998.

TRUSTEE:

Gerald Scott Wells

GRANTORS:

Thomas C. Leggett

Nealie Leggett

3

## EXHIBIT "A"

A parcel of land 14.15 chains wide (measured East and West) taken by parallel lines off the entire West side of Lot No. 1 in the Fractional NE¼ of Section 3, Township 12 South, Range 7 West, containing approximately 41 acres, more or less; and

A parcel of land in Lot No. 2 in the North Fractional Half of Section 3, Townsip 12 South, Range 7 West, bounded by a line beginning at the Southeast corner of said Lot 2 and running thence North along the East boundary thereof a distance of 900 feet to the Northeast corner of the parcel of land conveyed by deed recorded at page 278 of Book 157 of the Deed Records of Drew County, Arkansas, for a POINT OF BEGINNING FOR THE LAND HEREBY CONVEYED, thence from this beginning point run North along the East boundary of said Lot 2 a distance of 450 feet, thence West parallel with the South boundary of said Lot 2 a distance of 1045 feet to the East boundary of the right-of-way of U.S. Highway No. 425 (formerly known as Arkansas State Highway No. 81), thence South along the East boundary of said highway right-of-way a distance of 450 feet to the Northwest corner of the parcel of land conveyed by deed above-mentioned, thence East along the North boundary of said parcel of land conveyed by deed above-mentioned a distance of 1045 feet back to the point of beginning, containing 10 acres of land, more or less; and,

Twenty acres of land taken in a strip of uniform width off the entire South side of all that part of Lot 2 in the North Fractional Half of Section 3, Township 12 South, Range 7 West, lying East of the East boundary of the right-of-way of U.S. Highway No 425 (formerly known as Arkansas State Highway No. 81), as same is now located.



Filed For Record
Drew County, AR
Beverly Burke, Circuit Clerk
By

MAY 0 9 2017

AM 1/2/3/4/5/6/7/8/9/10/11 12PM

This Instrument Prepared By:
Drew County Abstract & Title Company
115 South Main Street
Monticello, Arkansas 71655

Approved as to form by:
C. C. Gibson, III, Attorney
119 South Main Street
Monticello, AR 71655

92695

## TRUSTEE'S DEED

### KNOW ALL MEN BY THESE PRESENTS:

That I, Tyler Wells, as substitute Trustee of the Big Piney Trust, dated November 6, 1998, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration cash in hand paid by Bobby Wells and Earline Wells, his wife, the receipt and overall sufficiency of which consideration is hereby expressly acknowledged, do hereby grant, bargain, sell and convey unto the said Bobby Wells and Earline Wells, his wife, as tenants by the entirety with right of survivorship and unto their heirs and assigns forever, the following described real property situated in the County of Drew, State of Arkansas, to-wit:

A parcel of land located in Lot No. 2 of the Fractional Section 3, Township 12 South, Range 7 West, more particularly described as: Commencing at the Northeast corner of said Lot 2; thence run South 00°12'05" East along the East boundary of said Lot 2 a distance of 1061.62 feet; thence run Grid West a distance of 274.14 feet to the centerline of a private gravel drive for the beginning point for the land hereby described; thence from said Point of Beginning, run South 21°38'03" East along the centerline of said gravel drive a distance of 59.51 feet; thence run South 39°01'27" East along the centerline of said gravel drive a distance of 64.76 feet; thence leaving said centerline, run South 69°07'18" West a distance of 63.60 feet; thence run South 32°48'47" East a distance of 156.02 feet; thence run South 57°11'14" West a distance of 167.13 feet; thence run North 13°01'18" West a distance of 334.83 feet; thence run North 69°07'19" East a distance of 127.90 feet back to the point of beginning, containing 1.00 acres of land, more or less; all as shown on survey prepared by Josh Martin, Registered Land Surveyor, dated September 18, 2016; AND,

-1-

EXHIBIT
D

**EASEMENT DESCRIPTION:**

An easement 12 feet in width for the purpose of ingress and egress from the East boundary of U.S. Highway No. 425 to and from the above described parcel of land located in Lot No. 2 of the Fractional Section 3, Township 12 South, Range 7 West, Drew County, Arkansas, the centerline of said easement being more particularly described as follows: Commencing at the Northeast corner of said Lot 2; thence run South 89°38'55" West a distance of 999.46 feet to the East boundary of U.S. Highway No. 425 as described as AHTD Job No. R20137 dated June 28, 1999; thence run South 05°11'25" East along the East boundary of said highway a distance of 603.81 feet; thence run South 03°28'28" East along the East boundary of said highway a distance of 108.48 feet to the intersection of the centerline of a private gravel drive therefound for the beginning point of the easement hereby described; thence from said EASEMENT POINT OF BEGINNING, run South 73°20'55" East a distance of 450.76 feet; thence run South 77°30'04" East a distance of 57.49 feet; thence run North 86°55'39" East a distance of 57.11 feet; thence run North 85°07'21" East a distance of 50.84 feet; thence run South 26°11'37" East a distance of 54.36 feet; thence run South 17°00'14" East a distance of 63.76 feet; thence run South 12°53'13" East a distance of 51.52 feet; thence run South 17°56'34" East a distance of 35.70 feet; thence run South 21°35'08" East a distance of 82.07 feet; thence run South 21°36'52" East a distance of 19.81 feet; thence run South 39°01'28" East a distance of 83.58 feet; thence run South 37°30'03" East a distance of 13.89 feet; thence run South 33°27'29" East a distance of 24.78 feet; thence run South 20°31'19" East a distance of 43.11 feet; thence run South 02°42'30" West a distance of 24.63 feet; thence run South 45°00'59" West a distance of 27.41 feet; thence run South 74°50'29" West a distance of 16.16 feet to the East boundary of the property described above and the termination point of this easement.

SUBJECT, HOWEVER, to any and all validly existing roads, rights-of-way and easements; AND FURTHER SUBJECT TO any outstanding mineral rights and interests (ie., not owned by grantor herein) including all rights of ingress and egress incidental or related thereto.

TO HAVE AND TO HOLD the same unto the said Bobby Wells and Earline Wells, his wife, as tenants by the entirety with right of survivorship and unto their heirs and assigns forever, together with all tenements, hereditaments and appurtenances thereunto belonging.

And I, Tyler Wells, in my capacity as substitute Trustee for Big Piney Trust for said consideration, do hereby covenant with the said Bobby Wells and Earline Wells, his wife, and their heirs and assigns, that I will as substitute Trustee of Big Piney Trust and not in my individual capacity will forever warrant and defend the title to said real property against the lawful claims of all persons whomsoever, excepting only those matters set forth hereinabove.

WITNESS my hand and seal on this _21st_ day of _October_, 2016.

**BIG PINEY TRUST**

By: _____ (SEAL)

Tyler Wells, Substitute Trustee


## ACKNOWLEDGMENT

STATE OF ARKANSAS )
                  )ss.
COUNTY OF D R E W )

BE IT REMEMBERED that on this _21st_ day of _October_, 2016, before me, the undersigned notary public, personally appeared, TYLER WELLS, known to me to be the person whose name is subscribed to the within instrument and who stated that he is the duly appointed and acting substitute Trustee of the Big Piney Trust and who acknowledged that he as Trustee for Big Piney Trust had executed the sais instrument for the consideration, uses and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _7-1-23_

CHARLOTTE JONES
NOTARY PUBLIC - STATE OF ARKANSAS
DREW COUNTY
Commission # 12393949
My Commission Expires 07-01-2023

-3-

I certify under penalty of false swearing that
documentary stamps or a documentary symbol
in the legally correct amount has been placed on
this instrument.

_Earlene Wells_
Grantee or Grantee's Agent

_2544 Hwy 425 N_
Grantee's Address

_Monticello Ar._

-4-

Morgan Appraisals (870) 367-9100

JHAVA Case No 031-4964838

# Uniform Residential Appraisal Report

031-4964838
File # 031-4964838

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address 2544 Highway #26 N | | City Monticello | State AR | Zip Code 71655 |
| Borrower Bobby & Earline Works | Owner of Public Record Tyler Work, Trustee of the Big Piney Trust | | County Drew | |
| Legal Description A parcel of land located in Lot No. 2 of the Fractional Section 3 Township 12S Range 7W | | | | |
| Assessor's Parcel # 001-06129-020 | | Tax Year 2017 | R.E. Taxes $ 1,649 | |
| Neighborhood Name Drew County | | Map Reference 39220 | Census Tract 4905.00 | |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | | ☐ PUD HOA $ 0 | ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | | |
| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | | | | |
| Lender/Client Reverse Mortgage Funding LLC | Address 1455 Broad Street #1, Bloomfield, NJ 07003 | | | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). Appraiser Office, homeowner and visual inspection. There is no MLS street for this property, this dwelling was obtained in 2013 by Tyler Work, Trustee of the Big Piney Trust and has not been offered for sale, since H/O obtained the property.

☐ I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

| | | | | | |
|---|---|---|---|---|---|
| Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No | Data Source(s) | | |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE $(000) | AGE | One-Unit 70 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 5 Low | 10 | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 125 High | 14 | Multi-Family % |
| Neighborhood Boundaries Subject neighborhood is bounded by Bill Henry Rd to the North, S Bowser Rd | | | 195 High | 48 | Commercial % |
| to the South, Jose Chapel Rd to the East and Sullivan Rd to the West. | | | 169 Pred | 31 | Other 30 % |

Neighborhood Description There are no negative factors that would negatively affect the marketability of the subject property. Schools, shopping centers, religious centers and employment are within a 2.0 mile radius of subject property. Present land use is 70% single-family residences and 30% vacant land.

Market Conditions (including support for the above conclusions) The general market conditions remain stable with a steady supply and demand. Interest rate range from 3.0 to 8.0% with 0-1 points being considered normal. Financing is available through FHA, VA and Conventional lending.

| | | | | |
|---|---|---|---|---|
| Dimensions See Supplemental Addendum | Area 1.00 ac | Shape Irregular | View N Woods Res | |
| Specific Zoning Classification None | Zoning Description None | | | |
| Zoning Compliance ☐ Legal ☐ Legal Nonconforming (Grandfathered Use) ☒ No Zoning ☐ Illegal (describe) | | | | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | | ☒ INDIV-SPTC SY | Street Asphalt | | |
| Gas | ☒ | | Sanitary Sewer | | ☒ INDIV-SPTC SY | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 05043C0175C   FEMA Map Date 09/05/2011

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
There are no apparent adverse conditions, encroachments or assessments that would negatively affect the subject property's value. The size, shape and landscaping is typical for the area.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Concrete/Average | Floors | Carp/Lin/Vin/Avr |
| # of Stories 1.5 | | ☐ Full Basement ☒ Partial Basement | | Exterior Walls | Brick/Wood/Average | Walls | S.R./P/W/P/Average |
| Type ☒ Det ☐ Att ☐ S-Det/End Unit | | Basement Area 354 sq.ft. | | Roof Surface | Metal/Average | Trim/Finish | S.R./P/W/P/Average |
| ☒ Existing ☐ Proposed ☐ Under Const | | Basement Finish 0 % | | Gutters & Downspouts None | | Bath Floor | Lin/Vin/Average |
| Design (Style) Ranch | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type S.H. Ins w/Average | | Bath Wainscot | Ceramic/Average |
| Year Built 1976 | | Evidence of ☐ Infestation | | Storm Sash/Insulated None | | Car Storage ☐ None | |
| Effective Age (Yrs) 10 | | ☐ Dampness ☐ Settlement | | Screens Metl/Average | | ☒ Driveway # of Cars 1 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | | Driveway Surface Gravel | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other ☐ Fuel Gas | | ☐ Woodstove(s) # 0 | | ☐ Garage # of Cars 0 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Fireplace(s) # 1 ☒ Fence Wood | | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Patio/Deck ☐ Porch Covered Porch | | ☐ Att ☐ Det ☐ Built-in | |
| Appliances ☒ Refrigerator ☒ Range/Oven | ☐ Dishwasher ☐ Disposal ☐ Microwave | ☐ Washer/Dryer ☐ Other (describe) | | ☐ Pool None | | | |

Finished area above grade contains: 6 Rooms   3 Bedrooms   3.0 Bath(s)   1,957 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Six rooms excludes bathrooms and laundry, living area rooms are as follows: living room, breakfast, kitchen, three bedrooms, three baths, and laundry.

Describe the condition of the property (including needed repairs, deterioration, renovation, remodeling, etc.). C3, No updates in the prior 16 years. The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. The structure has been well maintained.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, construction, etc.)? ☒ Yes ☐ No If No, describe

Freddie Mac Form 70 March 2005          UAD Version 9/2011    Page 1 of 6          Fannie Mae Form 1004 March 2005

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE


EXHIBIT
E

## Uniform Residential Appraisal Report

FHA/VA Case No. 031-4964838

031-4964838
File # 031-4964838

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| There are | 6 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 105,000 | | to $ 182,000 |
| There are | 7 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 125,000 | | to $ 195,000 |
| Address | 2544 Highway 425 N Monticello, AR 71655 | 983 Rock Springs Monticello, AR 71655 | 229 Mack Hood Rd Monticello, AR 71655 | 3190 Highway 83 N Monticello, AR 71655 |
| Proximity to Subject | | 6.88 miles NW | 2.77 miles W | 4.48 miles NE |
| Sale Price | $ | $ 183,000 | $ 176,000 | $ 155,000 |
| Sale Price/Gross Liv. Area | $ 90 ft | $ 98.81 sq ft | $ 59.38 sq ft | $ 60.02 sq ft |
| Data Source(s) | | DataScout,DOM Unk | CARMLS # 18019278,DOM 10 | DataScout,DOM Unk |
| Verification Source(s) | | Drew County Tax Records | Drew County Tax Records | Drew County Tax Records |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-)$ Adjustment | DESCRIPTION +(-)$ Adjustment | DESCRIPTION +(-)$ Adjustment |
| Sales or Financing Concessions | | ArmLn Conv,0 | REO Conv,0 | ArmLn FHA,0 |
| Date of Sale/Time | | s07/16,Unk | s08/16,Unk | s11/16,Unk |
| Location | N,Res,Res | N,Res,Res | N,Res,Res | N,Res,Res |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 1.00 ac | 5.00 ac -4,000 | 1.49 ac 0 | 1.56 ac 0 |
| View | N,Woods,Res | N,Woods,Res | N,Woods,Res | N,Woods,Res |
| Design (Style) | DT1S,Ranch | DT1,Ranch 0 | DT1S,Ranch 0 | DT1,Ranch 0 |
| Quality of Construction | Q3 | Q3 | Q3 | Q3 |
| Actual Age | 41 | 48 0 | 18 -2,300 | 14 -2,700 |
| Condition | C3 | C3 | C3 | C3 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | Total / Bdrms / Baths | Total / Bdrms / Baths |
| Room Count | 6 / 3 / 3.0 | 6 / 3 / 1.0 +4,000 | 7 / 3 / 3.0 0 | 7 / 3 / 2.0 +2,000 |
| Gross Living Area | 1,857 sq ft | 1,852 sq ft +1,050 | 2,964 sq ft -10,070 | 2,599 sq ft -6,420 |
| Basement & Finished Rooms Below Grade | 364sf0stwo | 0sf | 0sf | 0sf 0 |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | Central H/A | Central H/A | Central H/A | Central H/A |
| Energy Efficient Items | Insulation | Insulation | Insulation | Insulation |
| Garage/Carport | 1cp1dw | 1cp1dw | 2ga1dw -2,000 | None +1,000 |
| Porch/Patio/Deck | CpCpsFEPrOP | CpcpsrFEP +3,000 | Cpor/Cpat/Odec +2,000 | Cpor/Cpat/Odec +2,000 |
| Fireplace | Yes-1 | Yes-1 | Yes-1 | No +2,000 |
| Fence | Yes | Yes | No +1,000 | No +1,000 |
| Storage Building | No | Yes -1,000 | Yes -1,000 | Yes -1,000 |
| Net Adjustment (Total) | | + □ - ☒ $ 3,050 | □ + ☒ - $ -12,370 | □ + ☒ - $ -2,120 |
| Adjusted Sale Price | | Net Adj. 1.7 % | Net Adj. 7.0 % | Net Adj. 1.4 % |
| of Comparables | | Gross Adj. 7.1 % $ 186,050 | Gross Adj. 10.4 % $ 163,630 | Gross Adj. 11.2 % $ 152,880 |

☒ I did □ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research □ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    Assessor Office
My research □ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    Assessor Office
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Assessor Office | Assessor Office | Assessor Office | Assessor Office |
| Effective Date of Data Source(s) | 03/09/2017 | 03/09/2017 | 03/09/2017 | 03/09/2017 |

Analysis of prior sale or transfer history of the subject property and comparable sales    According to public records maintained by the Drew County Assessor
Office. Tyler Wells Trustee of the Big Piney Trust obtained the title to the subject property on 05.07.2013.

Summary of Sales Comparison Approach    See attached addenda.

Indicated Value by Sales Comparison Approach $    159,200

Indicated Value by: Sales Comparison Approach $ 159,200    Cost Approach (if developed) $ 171,749    Income Approach (if developed) $
In arriving at an estimate of value for the subject property, most consideration is given to the sales comparison approach due to it being based on the actions of typical buyers and sellers in the marketplace.

This appraisal is made □ "as is", □ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☒ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or □ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: See Supplemental Addendum.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 159,200 , as of    04/12/2017 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005    UAD Version 9/2011    Page 2 of 6    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

FHA/VA Case No. 031-4954838
031-4954838
File # 031-4954838

**NOTE:** The purpose of the appraisal is to render an "As-Is" opinion of value as of the effective date of the report. The Intended User of this appraisal report is the Lender/Client and HUD/FHA. The Intended Use is to evaluate the property that is the subject of this appraisal for a FHA reverse mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

As required by Fannie Mae, Freddie Mac, HUD, VA and others, this appraisal report includes attachments, exhibits, maps and other addenda necessary (and often critical) for the client and/or intended user to recognize the scope of work and development of the value opinion. The attachments assist in understanding the relevant characteristics of the subject property and may identify issues (if any) that should be addressed. They include data and analysis deemed necessary to provide the client with a credible opinion. The "Clarification of Assumptions, Limiting Conditions, Certifications, and Scope of Work" (COSOW) addendum clarifies and explains the scope of work employed in this appraisal and details what the appraiser did and did not do with regards to this assignment. The COSOW also provides specifics as to the development of the 1004MC Addendum along with any exceptions to the COSOW that may have been necessary to complete a credible report.

**HIGHEST AND BEST USE ANALYSIS:** In the site section of the URAR, a Highest and Best Use conclusion was reported. The Highest and Best Use is that reasonable and probable use that supports the highest present value, as defined on the effective date of this appraisal report. Alternately, it is that use, from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible, and which results in highest land value. The subject property is located in Drew County near Monticello, AR and is not zoned. In addition to legally conforming utilization, the site lends itself to single family residential use both because of its size and topography, and compatibility with surrounding sites. It is concluded that the highest and best use of the subject site as if unimproved is a single family residence of a one to two story design having a gross living area ranging from 1,800 square feet minimum and 3,000 square feet maximum with a minimum zero-car carport and a maximum two-car garage with a gravel/concrete paved driveway in accordance with building setbacks. The Highest and Best Use with existing improvements is its current use, a single family residence, and that the size and design of the existing structure is an appropriate utilization. An Extraordinary Assumption is utilized with regards to the subject being compliant with any deed restrictions and covenants.

**VALUATION METHODOLOGY:** The valuation of residential property utilizes three approaches to value. The three approaches are: 1) The Cost Approach, 2) The Sales Comparison Approach, and 3) The Income Approach. Data relevant to each of the approaches is developed and analyzed to produce a value from each of the approaches. Each of the approaches utilizes data that is gathered from the market place. Items of both similarity and dissimilarity in comparable properties are analyzed and adjustments are made for the differences. Finally, the three indicators of value developed by the approaches, are correlated with reference to the quality and quantity of data available and weighed along with the applicability or suitability of the approaches to produce the appraiser's final opinion of value. As previously stated, and in communication with the client, this appraiser determined that the Cost Approach is applicable to the assignment, but is not necessary to develop a credible opinion of value. The Income Approach is not applicable to this assignment.

**SUBJECT SITE:** A site plan was not provided by the Client, nor was a survey of the subject site. The site dimensions contained on the URAR are estimations made by this appraiser based on data contained in the Drew County tax records. Site area contained herein is an approximation. Any slight variance in total site area will not have any effect on this appraiser's opinions or conclusions regarding the site. An Extraordinary Assumption is utilized with regards to the subject's site size.

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     The site value was determined by vacant land sales in Drew County, AR.

| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | | | OPINION OF SITE VALUE | | =$ | 10,500 |
|---|---|---|---|---|---|---|
| Source of cost data   Marshall & Swift Residential Cost Handbook | | | DWELLING | 1,982 Sq.Ft.@ $ 76.75 | =$ | 150,209 |
| Quality rating from cost service   Average  Effective date of cost data  12/2015 | | | | 264 Sq.Ft.@ $ 32.13 | =$ | 11,695 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | Garage/Carport | | =$ | 25,852 |
| The square foot method utilizing Marshall and Swift's Residential Cost | | | Garage/Carport  320 Sq.Ft. @ $ 18.00 | | =$ | 5,760 |
| Handbook was used to determine replacement cost for the subject | | | Total Estimate of Cost New | | =$ | 193,507 |
| property. Accrued depreciation was taken into account as indicated in | | | Less  Physical  Functional  External | | | |
| the cost approach calculation. | | | Depreciation   32,269 | | =$( | 32,258) |
| | | | Depreciated Cost of Improvements | | =$ | 161,249 |
| | | | "As-is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only) | | 50 Years | INDICATED VALUE BY COST APPROACH | | =$ | 171,749 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

| Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [ ] No   Unit type(s) [ ] Detached [ ] Attached |
|---|

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | | Total number of units | | Total number of units sold |
|---|---|---|---|---|
| Total number of units rented | | Total number of units for sale | | Data source(s) |

| Was the project created by the conversion of existing building(s) into a PUD? | [ ] Yes [ ] No  If Yes, date of conversion. |
|---|---|
| Does the project contain any multi-dwelling units? | [ ] Yes [ ] No  Data Source |
| Are the units, common elements, and recreation facilities complete? | [ ] Yes [ ] No  If No, describe the status of completion. |

| Are the common elements leased to or by the Homeowners' Association? | [ ] Yes [ ] No  If Yes, describe the rental terms and options. |
|---|---|

Describe common elements and recreational facilities.

FNVVA Case No. 031-4964838

# Uniform Residential Appraisal Report

031-4964838
File # 031-4964838

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

RHA/VA Case No. 031-4964838

## Uniform Residential Appraisal Report

031-4964838
File # 031-4964838

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

FHA/VA Case No. 031-4964838

## Uniform Residential Appraisal Report

031-4964838
File # 031-4964838

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   Glenn Morgan, Jr. | Name |
| Company Name   Morgan Agency, Inc. | Company Name |
| Company Address   PO Box 1285 | Company Address |
| Monticello, AR 71657-1285 | |
| Telephone Number   (870)723-2389 | Telephone Number |
| Email Address   gmorgan@bellt.net | Email Address |
| Date of Signature and Report   04/18/2017 | Date of Signature |
| Effective Date of Appraisal   04/12/2017 | State Certification # |
| State Certification #   CR0861 | or State License # |
| or State License # | State |
| or Other (describe) ____ State # ____ | Expiration Date of Certification or License |
| State  AR | |
| Expiration Date of Certification or License   06/30/2017 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2544 Highway 425 N | Date of Inspection |
| Monticello, AR 71655 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   169,200 | Date of Inspection |
| LENDER/CLIENT | |
| Name   Landmark Network, Inc. | COMPARABLE SALES |
| Company Name   Reverse Mortgage Funding LLC | |
| Company Address   1455 Broad Street #1, Bloomfield  NJ 07003 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Freddie Mac Form 70 March 2005                UAD Version 9/2011   Page 6 of 6                Fannie Mae Form 1004 March 2005

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

License

Doc V4 Case No. 021-4954153

STATE OF ARKANSAS



# APPRAISER LICENSING & CERTIFICATION BOARD

*Attest That*

*GLENN H. MORGAN, JR.*

On this date was certified as a

## STATE CERTIFIED RESIDENTIAL APPRAISER

The Arkansas Appraiser Licensing and Certification Board hereby affirms that this Certificate is issued in accordance with all the requirements of Arkansas Code Annotated, Section §17-11-101 et seq., and subsequently adopted "Rules and Regulations" and shall remain in force when properly supported by a current pocket identification card.

*NOVEMBER 26, 2007*                                    **CR0361**

Date Issued                                                 Certificate Number

*Nikki B. Bradley*

Chairman AAL & CB

---

ARKANSAS
APPRAISER LICENSING &
CERTIFICATION BOARD

This is to certify that
**Glenn Morgan, Jr.**

License #: CR 0361

has complied with the requirements of Arkansas Code Section §17-11-201 et seq., and is the holder of a valid certificate. This card is for identification purposes only.

**6/30/2017**

Expiration Date                                      Chairman

Filed For Record
Drew County, AR
Beverly Burks, Circuit Clerk
By_____

MAY 25 2017

AM 1/2/3/4/5/6/7/8/9/10/11/12 PM

**Record and Return To:**
Reverse Mortgage Funding LLC
Reverse Mortgage Funding LLC, Attn: Final Docs 3101 Technology Drive
Edmond, OK 77113

**This instrument was prepared by:**
sbungartzvail@rmftango.com (Name)
1455 Broad Street, 2nd Floor Bloomfield, NJ 07003 (Address)

92824

[Space Above This Line for Recording Data]

**STATE OF ARKANSAS**

MIN: ███████████

## ADJUSTABLE RATE DEED OF TRUST
### (HOME EQUITY CONVERSION)
### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

FHA Case Number: ███████
Loan Number: ███████

THIS DEED OF TRUST ("Security Instrument") is made on May 12, 2017. The trustor is Bobby Wells and Earline Wells, his wife, whose address is 2544 Highway 425 N, Monticello, AR 71655 ("Borrower"). The term "Borrower" does not include the Borrower's successors and assigns. The trustee is Don Elibott, Atty., 425 W. Capitol Avenue, Suite 3400, Little Rock, AR 72201 ("Trustee"). *The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.* The Lender is Reverse Mortgage Funding LLC which is organized and existing under the laws of DELAWARE, and whose address is 1455 Broad Street, 2nd Floor, Bloomfield, NJ 07003 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Mortgage Adjustable Rate Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable Rate Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of Two Hundred Fifty-Three Thousand Eight Hundred and 00/100 Dollars (U.S.$253,800.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note and Loan Agreement. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on October 28, 2093. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in DREW County, Arkansas, which has the address of:

2544 Highway 425 N, Monticello, AR 71655, and is described more fully on Exhibit A attached to, and hereby incorporated into, this Deed of Trust ("Property Address").

Reverse Mortgage Funding LLC
Company - NMLS #: 1281094 - Loan Number: 1517027992

Loan Originator: Douglas Polk
Loan Originator NMLS #: 339085

*Arkansas - 1st MERS Security Instrument (Adjustable)*        *Page 1 of 12*        © Bay Docs, LLC 03/01/2015


0233 053 0112


EXHIBIT
F

## EXHIBIT A

Exhibit A to the Deed of Trust made on May 12, 2017, by Bobby Wells and Earline Wells, his wife ("Borrower") to Don Elliott, Atty. ("Trustee") for the benefit of Reverse Mortgage Funding LLC ("Lender"). The Property is located in the county of DREW, state of AR, and is described as follows:

Description of Property

See Exhibit "A" Attached

Reverse Mortgage Funding LLC
Company - NMLS #: 1261094 - Loan Number: 1517027992

Loan Originator: Douglas Folk
Loan Originator NMLS #: 339085

*Arkansas - 1st MERS Security Instrument (Adjustable)*          *Page 12 of 12*          © *Bay Docs, LLC 03/01/2015*


233 053 1212

· EXHIBIT "A"
LEGAL DESCRIPTION

A parcel of land 14.15 chains wide (measured East and West) taken by parallel lines off the entire West side of Lot No. 1 in the Fractional Northeast Quarter (NE 1/4) of Section 3, Township 12 South, Range 7 West, containing approximately 41 acres, more or less; and

A parcel of land in Lot No. 2 in the North Fractional Half of Section 3, Township 12 South, Range 7 West, bounded by a line beginning at the Southeast corner of said Lot 2 and running thence North along the East boundary thereof a distance of 900 feet to the Northeast corner of the parcel of land conveyed by deed recorded at page 278 of Book 157 of the Deed Records of Drew County, Arkansas, for a point of beginning for the land hereby conveyed, thence from this beginning point run North along the East boundary of said Lot 2 a distance of 450 feet, thence West parallel with the South boundary of said Lot 2 a distance of 1045 feet to the East boundary of the right-of-way of U.S. Highway No. 425 (formerly known as Arkansas State Highway No. 81), thence South along the East boundary of said highway right-of-way a distance of 450 feet to the Northwest corner of the parcel of land conveyed by deed abovementioned, thence East along the North boundary of said parcel of land conveyed by deed above-mentioned a distance of 1045 feet back to the point of beginning, containing 10 acres of land, more or less;

And

Twenty acres of land taken in a strip of uniform width off the entire South side of all that part of Lot 2 in the North Fractional Half of Section 3, Township 12 South, Range 7 West, lying East of the East boundary of the right-of-way of U.S. Highway No 425 (formerly known as Arkansas State Highway No. 81), as same is now located.

LESS AND EXCEPT:

Part of Lot 2 of the fractional Northeast Quarter of Section 3, Township 12 South, Range 7 West, Drew County, Arkansas, more particularly described as follows:

Starting at the Southeast corner of Lot 2 of the fractional Northeast Quarter of Section 3; thence North 85 degrees 41 minutes 38 seconds West along the South line thereof a distance of 874.26 feet to a point on the proposed Easterly right of way line of U.S. Highway 425 for the Point of Beginning; thence continue North 85 degrees 41 minutes 38 seconds West along the South line of Lot 2 of the Fractional Northeast Quarter of Section 3 a distance of 20.51 feet to a point on the existing Easterly right of way line of U.S. Highway 425; thence North 04 degrees 43 minutes 37 seconds West along said existing right of way line a distance of 1377.33 feet to a point; thence South 85 degrees 41 minutes 38 seconds East a distance of 33.54 feet to a point on the proposed Easterly right of way line of U.S. Highway 425; thence South 05 degrees 11 minutes 25 seconds East along said proposed right of way line a distance of 232.15 feet to a point; thence South.03 degrees 28 minutes 28 seconds East along said proposed right of way line a distance of 228.76 feet to a point; thence South 04 degrees 43 minutes 37 seconds East along said proposed right of way line a distance of 303.00 feet to a point; thence South 03 degrees 48 minutes 48 seconds East along said proposed right of way line a distance of 611.52 feet to the Point of Beginning and containing 0.91 acre, more or less.

AND ALSO LESS AND EXCEPT:

Starting at the Southwest Corner of the Southeast Quarter of the Southeast Quarter of Section 34, Township 11 South, Range 7 West; thence North 89 degrees 38 minutes 23 seconds East along the South line thereof a distance of 220.82 feet to a point on the Easterly existing right of way line

of U.S. Highway 425 for the Point of Beginning; thence continue North 89 degrees 38 minutes 23 seconds East along the South line of the Southeast Quarter of the Southeast Quarter of Section 34 a distance of 30.21 feet to a point on the Easterly proposed right of way line of U.S. Highway 425; thence South 05 degrees 11 minutes 25 seconds East along said proposed right of way line a distance of 269.35 feet to a point; thence South 89 degrees 38 minutes 23 seconds West a distance of 32.39 feet to a point on the Easterly existing right of way line of U.S. Highway 425; thence North 04 degrees 43 minutes 37 seconds West along said existing right of way line a distance of 269.18 feet to the Point of Beginning and containing 0.19 acre, more or less.

APN: 001-05129-000

State of Arkansas
County of Drew

I hereby certify that this instrument was
filed for record and recorded as follows:

DATE 5/25/17    TIME 10:37

INSTRUMENT# __92824__

Beverly Burks, Recorder of Drew County
BY _____

Filed For Record
Drew County, AR
Beverly Burks, Circuit Clerk
By _____

MAY 2 5 2017

(A)1/2/3/4/5/6/7/8/9/(10)11/12PM

Record and Return To:
Reverse Mortgage Funding LLC
Reverse Mortgage Funding LLC, Attn: Final Docs 3101 Technology Drive
Edmond, OK 77113

This instrument was prepared by:
sbungartzvall@rmftango.com (Name)
1455 Broad Street, 2nd Floor Bloomfield, NJ 07003 (Address)

FHA Case Number: ███████████
Loan Number ███████████

92825

[Space Above This Line for Recording Data]

STATE OF ARKANSAS

## ADJUSTABLE RATE SECOND DEED OF TRUST
### (HOME EQUITY CONVERSION)
#### THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN

THIS DEED OF TRUST ("Security Instrument" or "Second Security Instrument") is made on May 12, 2017. The trustor is Bobby Wells and Earline Wells, his wife, whose address is 2544 Highway 425 N, Monticello, AR 71655 ("Borrower"). The term "Borrower" does not include the Borrower's successors and assigns. The trustee is the SENIOR OFFICIAL WITH RESPONSIBILITY FOR SINGLE FAMILY MORTGAGE INSURANCE PROGRAMS IN THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT FIELD OFFICE WITH JURISDICTION OVER THE PROPERTY DESCRIBED BELOW, OR A DESIGNEE OF THAT OFFICIAL ("Trustee"). The beneficiary is the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410, ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Mortgage Adjustable Rate Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable Rate Second Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, including all future advances, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Second Note, up to a maximum principal amount of Two Hundred Fifty-Three Thousand Eight Hundred and 00/100 Dollars (U.S.$253,800.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note and the Loan Agreement. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on October 28, 2093. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in DREW County, Arkansas, which has the address of:

2544 Highway 425 N, Monticello, AR 71655, and is described more fully on Exhibit A attached to, and hereby incorporated into, this Deed of Trust ("Property Address").

Reverse Mortgage Funding LLC
Company - NMLS #: 1251094 - Loan Number: 1517027992

Loan Originator: Douglas Polk
Loan Originator NMLS #: 339085

*Arkansas - 2nd Security Instrument (Adjustable)*        *Page 1 of 12*        © Bay Docs, LLC 03/01/2015



1172 052 0112



EXHIBIT
G

## EXHIBIT A

Exhibit A to the Deed of Trust made on May 12, 2017, by Bobby Wells and Earline Wells, his wife ("Borrower") to the senior official with responsibility for single family mortgage insurance programs in the Department of Housing and Urban Development field office with jurisdiction over the property described below, or a designee of that official ("Trustee") for the benefit of the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410, ("Lender" or "Secretary"). The Property is located in the county of DREW, state of AR, and is described as follows:

Description of Property

See Exhibit "A" Attached

Reverse Mortgage Funding LLC
Company - NMLS #: 1221094 - Loan Number: 1517027992

Loan Originator: Douglas Polk
Loan Originator NMLS #: 339015

*Arkansas - 2nd Security Instrument (Adjustable)*          *Page 12 of 12*          © *Bay Docs, LLC 02/01/2015*



1172 052 1212

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

A parcel of land 14.15 chains wide (measured East and West) taken by parallel lines off the entire West side of Lot No. 1 in the Fractional Northeast Quarter (NE 1/4) of Section 3, Township 12 South, Range 7 West, containing approximately 41 acres, more or less; and

A parcel of land in Lot No. 2 in the North Fractional Half of Section 3, Township 12 South, Range 7 West, bounded by a line beginning at the Southeast corner of said Lot 2 and running thence North along the East boundary thereof a distance of 900 feet to the Northeast corner of the parcel of land conveyed by deed recorded at page 278 of Book 157 of the Deed Records of Drew County, Arkansas, for a point of beginning for the land hereby conveyed, thence from this beginning point run North along the East boundary of said Lot 2 a distance of 450 feet, thence West parallel with the South boundary of said Lot 2 a distance of 1045 feet to the East boundary of the right-of-way of U.S. Highway No. 425 (formerly known as Arkansas State Highway No. 81), thence South along the East boundary of said highway right-of-way a distance of 450 feet to the Northwest corner of the parcel of land conveyed by deed abovementioned, thence East along the North boundary of said parcel of land conveyed by deed above-mentioned a distance of 1045 feet back to the point of beginning, containing 10 acres of land, more or less;

And

Twenty acres of land taken in a strip of uniform width off the entire South side of all that part of Lot 2 in the North Fractional Half of Section 3, Township 12 South, Range 7 West, lying East of the East boundary of the right-of-way of U.S. Highway No 425 (formerly known as Arkansas State Highway No. 81), as same is now located.

LESS AND EXCEPT:

Part of Lot 2 of the fractional Northeast Quarter of Section 3, Township 12 South, Range 7 West, Drew County, Arkansas, more particularly described as follows:

Starting at the Southeast corner of Lot 2 of the fractional Northeast Quarter of Section 3; thence North 85 degrees 41 minutes 38 seconds West along the South line thereof a distance of 874.26 feet to a point on the proposed Easterly right of way line of U.S. Highway 425 for the Point of Beginning; thence continue North 85 degrees 41 minutes 38 seconds West along the South line of Lot 2 of the Fractional Northeast Quarter of Section 3 a distance of 20.51 feet to a point on the existing Easterly right of way line of U.S. Highway 425; thence North 04 degrees 43 minutes 37 seconds West along said existing right of way line a distance of 1377.33 feet to a point; thence South 85 degrees 41 minutes 38 seconds East a distance of 33.54 feet to a point on the proposed Easterly right of way line of U.S. Highway 425; thence South 05 degrees 11 minutes 25 seconds East along said proposed right of way line a distance of 232.15 feet to a point; thence South 03 degrees 28 minutes 28 seconds East along said proposed right of way line a distance of 228.76 feet to a point; thence South 04 degrees 43 minutes 37 seconds East along said proposed right of way line a distance of 303.00 feet to a point; thence South 03 degrees 48 minutes 48 seconds East along said proposed right of way line a distance of 611.52 feet to the Point of Beginning and containing 0.91 acre, more or less.

AND ALSO LESS AND EXCEPT:

Starting at the Southwest Corner of the Southeast Quarter of the Southeast Quarter of Section 34, Township 11 South, Range 7 West; thence North 89 degrees 38 minutes 23 seconds East along the South line thereof a distance of 220.82 feet to a point on the Easterly existing right of way line

of U.S. Highway 425 for the Point of Beginning; thence continue North 89 degrees 38 minutes 23 seconds East along the South line of the Southeast Quarter of the Southeast Quarter of Section 34 a distance of 30.21 feet to a point on the Easterly proposed right of way line of U.S. Highway 425; thence South 05 degrees 11 minutes 25 seconds East along said proposed right of way line a distance of 269.35 feet to a point; thence South 89 degrees 38 minutes 23 seconds West a distance of 32.39 feet to a point on the Easterly existing right of way line of U.S. Highway 425; thence North 04 degrees 43 minutes 37 seconds West along said existing right of way line a distance of 269.18 feet to the Point of Beginning and containing 0.19 acre, more or less.

APN: 001-06129-000

State of Arkansas
County of Drew

I hereby certify that this instrument was filed for record and recorded as follows:

DATE 5/25/17          TIME 10:32

INSTRUMENT# 92825

Beverly Burks, Recorder of Drew County
BY



C.C. GIBSON, III
PAUL W. KEITH
LEE D. CURRY
DANIEL H. WIGLEY

DHW@GIBSONANDKEITH.COM

**GIBSON & KEITH**
ATTORNEYS AT LAW
A PROFESSIONAL LIMITED LIABILITY COMPANY

119 SOUTH MAIN STREET
POST OFFICE DRAWER 447
MONTICELLO, AR 71657-0447
PHONE: (870) 367-2438
FAX: (870) 367-8306
WWW.GIBSONKEITHLAW.COM

January 13, 2021

**VIA FAX ONLY**                                    **FAX:  (973) 798-1012**
Reverse Mortgage Funding
Legal Department
1455 Broad Street
Bloomfield, NJ 07003

      RE:    Your Loan No: ▮▮▮▮▮▮
            Borrowers: Bobby & Earline Wells

Dear Sir:

      We have been contacted by Earline Wells, who is the widow of Bobby Wells, relative to the subject reverse mortgage loan. In examining the documents, we have discovered that a serious error was made in the mortgages given in connection with the subject reverse mortgage. It appears that your company took a mortgage on a large tract of land, instead of the one (1) acre upon which the Wells' home stands. This results in your mortgage being against lands owned by a trust, not Bobby and Earline Wells.

      We started to file suit to reform the mortgage documents, but wanted to give you the chance to investigate this matter and work with us to do a reformation of the mortgage documents to reflect that the only property covered by the mortgages is the one acre upon which the house sits (together with an easement to the public highway). We will, accordingly, wait thirty (30) days from the date of this letter before filing suit for reformation of the mortgage documents to reflect that same only covers the one acre with the house and not the additional lands owned by a trust.

      We would be happy to visit with you about this once you get familiar with the documents involved. You have but to call us to obtain our cooperation.

                    Sincerely,

                    *Daniel Wigley*

                    Daniel H. Wigley

CCG/cb

**EXHIBIT**

H

# REVERSE MORTGAGE FUNDING

**Reverse Mortgage Servicing Department**
Complaints Management ● P.O. Box 40719 ● Lansing, MI 48901

February 3, 2021

Daniel H. Wigley, Esq.
Sent via email:
dhw@gibsonandkeith.com

**Re:    *Customers: Mr. Bobby Wells and Ms. Earline Wells***
**       *Property Address: 2544 Highway 425 N, Monticello, AR 71655***
**       *Loan Number:* ▮▮▮▮▮**

Dear Mr. Wigley:

I am writing in response to your letter that the Escalation Department received on December 24, 2020, regarding the above-referenced account. I appreciate the opportunity to respond to the concerns raised in the letter.

We have reviewed the account and found that the origination appraisal, of which the loan was based, described the property as one acre, whereas the legal description of the lien is described as approximately 41 acres. Thank you for bringing your concerns to our attention, our title resolution team is reviewing the lien with the intent to remove any and all acres from the lien that the lien was not intended to cover.

If you have any additional questions, please contact us at (866) 446-0026. We are available Monday through Thursday 8:00 a.m. to 8:00 p.m., and Friday 8:00 a.m. to 5:00 p.m. Eastern time.

Sincerely,

*Mike Hatcher*

Mike Hatcher
Reverse Mortgage Servicing Department



PLEASE SEE THE LAST PAGE FOR IMPORTANT DISCLOSURES

